UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DUFFER, an individual on behalf of himself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>UNITED CONTINENTAL HOLDINGS, INC., a Delaware Corporation; UNITED AIRLINES, INC., a Delaware Corporation; CONTINENTAL AIRLINES, INC., a Delware Coproration; AIR LINE PILOTS ASSOCIATION, INT'L, an unknown business entity; THE CONTINTENTAL AIRLINES CHAPTER OF THE AIR LINE PILOTS ASSOCIATION, INT'L, an unknown business entity, inclusive,<br><br>　　　　　　　　Defendants. | Case No. 3:13-cv-0318-GPC-WVG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(ECF NO. 8)** |

**INTRODUCTION**

On February 8, 2013, Mark Duffer ("Plaintiff") filed a class-action complaint on behalf of himself and other Continental Airlines pilots who are serving or have served in the United States Armed Services or National Guard. (ECF No. 1.) Plaintiff asserts three causes of action for (1) violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"); (2) violations of California's Militarry and Veterans Code ("MVC"); and (3) negligence. (Id.) Pending before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction

("Motion for TRO"). (ECF No. 8.) Plaintiff filed the Motion for TRO on February 21, 2013. On February 26, 2013, defendants Air Line Pilots Association, Int'l ("ALPA") and The Contintental Chapter of Air Line Pilots Association, Int'l ("CAL-ALPA") (together, "Union Defendants") filed an opposition to the Motion for TRO. (ECF Nos. 9, 10, 11.) Also on February 26, 2013, defendants United Continental Holdings, Inc.; United Airlines, Inc.; and Continental Airlines, Inc. (together, "Airline Defendants") filed an opposition to the Motion for TRO. (ECF Nos. 12, 13.) On February 27, 2013, Plaintiff filed a reply in support his Motion for TRO. (ECF No. 16.) After considering the parties' submissions, and for the reasons set forth below, the Court **DENIES** the Motion for TRO.

## BACKGROUND

Plaintiff, an airline pilot and member of the U.S. Marine Corps Reserve, alleges Defendants have unlawfully withheld payment to Plaintiff and the putative class based on their military service.

Plaintiff alleges that defendant United Continental Holdings, Inc. ("UCH") was formed in connection with the merger of defendants United Airlines, Inc. ("United") and Continental Airlines, Inc. ("Continental"). Plaintiff alleges that, thereafter, UCH negotiated a joint "United Pilot Agreement" with defendants Air Line Pilots Association, Int'l ("ALPA"); the Continental Airlines Chapter of ALPA ("CAL-ALPA"); and the United Airlines Chapter of ALPA (not a party to this case).

Plaintiff alleges that, under the United Pilot Agreement, UCH provided ALPA with $400 million to be distributed to Continental and United pilots. Plaintiff alleges that an arbitrator subsequently determined that $225 million should go to United pilots and that $175 million should go to Continental pilots. Plaintiff, a Continental pilot, alleges that CAL-ALPA then formulated a method for distributing the $175 million to Continental pilots.

Plaintiff alleges that CAL-ALPA's distribution formula was based on an "earnings portion" and an "availability portion." Plaintiff alleges that, under the "availability portion," the more available a pilot was during each month of a specific period, the greater the portion of the $175 million the pilot would receive. Plaintiff alleges that pilots who were absent due to military service during that specific period were considered unavailable during their absence and will therefore receive a smaller portion of the $175 million. Plaintiff alleges that other types of leave, such as jury duty leave and sick leave, were not counted as periods of unavailability. Plaintiff therefore claims that CAL-ALPA's distribution

formula violates the USERRA and the MVA.

The first portion of the $175 million was distributed on January 31, 2013. Plaintiff now seeks a TRO and preliminary injunction enjoining the next distribution of the $175 million, which is set to occur on February 28, 2013. Both the Union Defendants and the Airline Defendants assert Plaintiff's Motion for TRO should be denied because (1) this Court lacks jurisdiction to grant the relief requested, and (2) Plaintiff has failed to demonstrate he and the putative class will suffer irreparable harm if a TRO and preliminary injunction are not granted.

**DISCUSSION**

**I.  Jurisdiction**

Both the Union Defendants and the Airline Defendants assert that, pursuant to the Norris-LaGuardia Act, this Court lacks jurisdiction to enjoin the next distribution of the $175 million to the Continental pilots. Defendants contend the dispute over ALPA's distribution formula is a "labor dispute" as defined by the Norris-LaGuardia Act and that Plaintiff is attempting to enjoin the "paying or giving to . . . any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value."

**A.  Legal Standard**

A federal court is one of limited jurisdiction. See Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d 769, 774 (9th Cir.1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 94 (1998).

In the context of labor disputes, the Norris-LaGuardia Act provides that "[n]o court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter."[1] 29 U.S.C. § 101. The public policy declared in Chapter 6 is a policy to

---

[1] "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). "[T]he term 'labor dispute' must not be narrowly construed because the statutory definition itself is extremely broad." Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n, 457 U.S. 702, 712 (1982). "The critical element in determining whether the provisions of the Norris-LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" Id.

ensure the individual laborer's

> full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection

Id. § 102. The Norris-LaGuardia Act "expresses a basic policy against the injunction of activities by labor unions." Burlington Northern R. Co. v. Brotherhood of Maintenance of Way Employees, 481 U.S. 429, 437 (1987) (citation omitted). "The Act thus reflects Congress' decision to abolish, for purposes of labor immunity, the distinction between primary activity between the immediate disputants and secondary activity in which the employer and the members of the union do not stand in the proximate relation of employer and employee." Id. at 439 (internal quotations omitted).

**B.  Analysis**

While the Court recognizes that the term "labor dispute" is to be construed broadly, the Court is not convinced the instant controversy is a "labor dispute" under the Norris-LaGuardia Act. As the Supreme Court recognized in Burlington, the Norris-LaGuardia Act "expresses a basic policy against the injunction of activities by labor unions." Here, Plaintiff is not attempting to enjoin the association or organization of laborers, the designation of representatives, the negotiations of conditions of employment, or "any concerted activities for the purpose of collective bargaining or other mutual aid or protection." Plaintiff is attempting only to enjoin a distribution plan formulated by the very union representing him. In short, the Court finds Plaintiff's request does not implicate the policy underlying the Norris-LaGuardia Act. Accordingly, the Court concludes it does have jurisdiction to consider Plaintiff's Motion for TRO.

**II.  TRO**

**A.  Legal Standard**

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a

preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Regarding irreparable harm, "plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original).

Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id. Thus, regarding a likelihood of success on the merits, the Ninth Circuit has adopted an "approach under which a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" Id. While the "serious questions" approach might satisfy the first and third Winter factors, the plaintiff must also show a likelihood of irreparable injury and that the injunction is in the public interest. Id. at 1135.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22. The moving party bears the burden of demonstrating it is entitled to injunctive relief. See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776-77 (9th Cir. 2011).

**B.     Analysis**

The Court finds Plaintiff has failed to demonstrate a likelihood of irreparable injury and therefore does not address the remaining Winter factors. See Cottrell, 632 F.3d at 1135.

Plaintiff asserts he and the putative class will be irreparably harmed if the Court does not enjoin the February 28, 2013 distribution of the $175 million because "it will be extremely difficult, if not impossible, for Plaintiff and Class members to recover the money to which they are entitled under USERRA." Plaintiff claims he "would likely need to recall all the payments from each of the

1    approximately 4,500 Continental pilots and only after all the payments were collected could Plaintiff
2    recalculate the correct payment amounts based on a formula compliant with USERRA." Plaintiff
3    contends this "would be difficult, if not impossible, . . . as these 4,500 pilots more than likely will have
4    already deposited their payments into retirement funds, or worse, spent it with no possibility of
5    recovery." Plaintiff claims, "[o]nce the remainder of the $175 million is distributed, there would be
6    no other available funds to compensate Plaintiff and Class members."

7        In opposition, both the Union Defendants and the Airline Defendants assert that "[o]nce a
8    distribution is made on February 28, 2013, there will remain $87.5 million to be distributed to the pre-
9    merger Continental pilots." Defendants assert that, "[o]f that amount, the lion's share – $62.5 million
10   – cannot be distributed under the agreement until there is an integrated joint United-Continental pilot
11   seniority list." Defendants assert "[t]he complicated process of arriving at such a list has only begun
12   and is expected to take several months to complete.

13       Defendants assert that, even assuming Plaintiff prevailed on his claims, Plaintiff and the class
14   would be entitled to, at most, approximately $2 million. Defendants assert this amount would be
15   payable from the unpaid $87.5 million. Defendants further assert that no distribution dates have been
16   set after February 28, 2013. Defendants lastly assert that, in any event, Plaintiff's alleged injury can
17   be fully compensated by an award of monetary damages.

18       In reply, Plaintiff cites to the declaration of ALPA's counsel, Stacey Leyton, in which Leyton
19   states that any amount payable to Plaintiff and the putative class would be no more than $10 million.
20   Plaintiff then asserts that he also "requests liquidated damages, attorneys' fees and prejudgment
21   interests as provided by USERRA," and that, "[a]s such, the full funds required for this single dispute
22   could easily exceed $30 million." Plaintiff further contests the availability of the undistributed $62.5
23   million, asserting that those remaining funds could be distributed "any day," leaving only the $21
24   million reserved for errors and omissions in distribution.

25       "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets,
26   or other inability to recover monetary damages, if relief is not granted." Johnson v. Couturier, 572
27   F.3d 1067, 1085 (9th Cir. 2009).

28       Here, the Court first notes that Plaintiff's own exhibit submitted in support of his Motion for

TRO indicates that $21,875,000 is being withheld from the $175 million until disputes over the distribution of the $175 million, like this one, are resolved. (ECF No. 8-3 at 2-3.) Despite his burden to do so, Plaintiff does not demonstrate that, if successful on all claims, Plaintiff and the putative class would be entitled to more than $21,875,000 or that those reserved funds would be insufficient to compensate Plaintiff and the putative class. Plaintiff provides no support for his claim that damages "could easily exceed $30 million." Moreover, Plaintiff has failed to demonstrate why monetary damages – paid from funds other than the $175 million – would be unavailable or insufficient were this Court to deny his Motion for TRO. Accordingly, having concluded that Plaintiff has failed to meet his burden of demonstrating irreparable harm, the Court **DENIES** Plaintiff's Motion for TRO.

**SO ORDERED.**

DATED: February 27, 2013

HON. GONZALO P. CURIEL
United States District Judge